Affirmed and Opinion filed February 27, 2003
















Affirmed and
Opinion filed February 27, 2003.

 

 

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-02-00129-CR

____________

 

ANTHONY JAMES QUINNEY, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 

__________________________________________

 

On Appeal from
the County Criminal Court at Law No. 6

Harris County, Texas

Trial Court
Cause No. 1048068

 

__________________________________________

 

O P I N I O
N

            Anthony James Quinney
appeals his conviction for misdemeanor driving while intoxicated.  He contends the trial court erred in
admitting evidence of horizontal gaze nystagmus,
vertical gaze nystagmus, and resting nystagmus.  We
affirm.

Factual and Procedural Background

            This case arises out of a traffic
stop in March 2001.  A citizen reported
seeing an individual driving erratically on a Houston
street.  Officer Todd Harris, who was
dispatched to investigate the report, observed that the vehicle was being
driven very slowly and was swerving between lanes.  At one point, the vehicle rode up on the
curb.  Officer Harris turned on his
vehicle’s emergency lights to signal the driver to stop.  The driver, later identified as appellant,
stopped his car, stepped out, and inexplicably began to push his car into the
traffic median.  Officer Harris asked
appellant to perform certain field sobriety tests.  Appellant appeared to be incapable of
comprehending Officer Harris’s instructions. 
Because he suspected appellant might have a mental illness, Officer
Harris telephoned appellant’s mother to determine if appellant was mentally
ill.  When Officer Harris learned that
appellant was not mentally ill, he placed appellant in the patrol car.  Officer Harris then called for a fellow
police officer, who was trained in the detection of intoxication.  Officer Correia
arrived on the scene shortly thereafter. 


            Officer Correia
was certified by the State of Texas to conduct
field sobriety tests, including horizontal gaze nystagmus,
walk and turn, and one-leg stand. 
Officer Correia had also taken the Drug
Recognition Expert course, which teaches officers how to determine whether a
person is under the influence of narcotics and/or alcohol.  Officer Correia
performed several field sobriety tests on appellant.  He first observed that appellant’s pupils
were constricted, which is a sign that appellant might have used a narcotic
analgesic.  Officer Correia
also noticed appellant’s speech pattern was incoherent and that he repeated
himself and became agitated.  Appellant
appeared to have a dry mouth and was licking his lips, which is also an
indication of narcotic use.  When Officer
Correia asked appellant to perform certain field
sobriety tests, such as walk and turn, appellant could not comprehend or follow
the instructions.

            Officer Correia
performed horizontal gaze nystagmus (“HGN”) and
vertical gaze nystagmus (“VGN”) tests on
appellant.  According to the officer’s
trial testimony, when he began to administer the tests, he noticed appellant
had “resting nystagmus,” a condition characterized by
involuntary jerking of the eyes.  Officer
Correia testified that appellant demonstrated the
maximum six clues of intoxication during the HGN test.  The results of the VGN test indicated that
appellant had either reached his upper limit of alcohol tolerance or was under
the influence of narcotics. Neither Officer Harris nor Officer Correia detected an odor of alcohol on appellant’s
breath.  After conducting the field
sobriety tests, Officer Correia concluded appellant
was under the influence of narcotics. 

            Prior to trial, appellant filed a
motion in limine asking the trial court to restrict
the State from introducing evidence of VGN testing and results.  The trial court conducted a hearing at which
Officer Correia testified that VGN testing is
performed as a part of the HGN test. Officer Correia
also testified that the VGN test was usually used to determine whether the
suspect was under the influence of narcotics (as opposed to alcohol), but he
did not know the underlying scientific theory behind the VGN test.  The trial court denied appellant’s motion in limine.  At trial,
appellant objected to evidence of HGN and VGN testing and to Officer Correia’s testimony concerning “resting nystagmus.”

            Appellant was convicted of
misdemeanor driving while intoxicated and sentenced to 180 days in the Harris
County Jail.  Appellant appeals his
conviction contending the trial court abused its discretion in admitting the nystagmus test results.

Standard of Review

            We review the admission of
scientific evidence under an abuse-of-discretion standard. Emerson v. State, 880 S.W.2d 759, 761
(Tex. Crim. App. 1994).  We will uphold the trial court’s ruling if it
was within the zone of reasonable disagreement.  See Weatherred
v. State, 15 S.W.3d 540, 542 (Tex. Crim. App. 2000).

Analysis and Discussion

 

Did the trial
court err in admitting evidence of the horizontal gaze nystagmus
test?

 

            In his first issue, appellant
contends the trial court erred in admitting evidence of the HGN test because
the predicate for admitting such evidence was not satisfied.  Testimony concerning the HGN test is
considered novel scientific evidence and thus is subject to the requirements of
Kelly v. State, 824 S.W.2d 568 (Tex. Crim. App. 1992).  See Emerson, 880 S.W.2d
at 763.  The admissibility of
novel scientific evidence is governed by Texas Rule of Evidence 702, which
states:

If scientific, technical, or
other specialized knowledge will assist the trier of
fact to understand the evidence or to determine a fact in issue, a witness
qualified as an expert by knowledge, skill, experience, training, or education,
may testify thereto in the form of an opinion or otherwise.

Tex. R. Evid. 702.

            To constitute scientific knowledge
that will assist the trier of fact, the proposed
testimony must be relevant and reliable.  Kelly, 824 S.W.2d at 572.  To be considered reliable, evidence based on
a scientific theory must satisfy three criteria: (1) the underlying scientific
theory must be valid; (2) the technique applying the theory must be valid; and
(3) the technique must have been applied properly on the occasion in question.  Id. at 573.  Nystagmus is an
involuntary rapid oscillation of the eyes in a horizontal, vertical, or rotary
direction.  Emerson, 880 S.W.2d at 765 (citing The Merck Manual of Diagnosis and Therapy
1429 (R. Berkow ed., 1992)).  Horizontal gaze nystagmus
refers to the inability of the eyes to smoothly follow an object moving
horizontally across the field of vision, particularly when the object is held
at an angle of forty-five degrees or more to the side.  Webster v. State, 26 S.W.3d
717, 719 n.1 (Tex. App.—Waco 2000, pet. ref’d)
(citing National Highway Traffic Safety
Admin., U.S. Dep’t of Transp., DWI Detection and
Standardized Field Sobriety Testing, Student Manual VIII—12–15 (1995)
(“NHTSA Manual”)).  Consumption of
alcohol exaggerates nystagmus to the degree it can be
recognized by the naked eye.  Emerson, 880 S.W.2d at
766.  Nystagmus
also may be caused by factors other than alcohol, such as narcotic use,
neurological disorders, or brain damage.  Id.

            In Emerson, the Court of Criminal Appeals examined the underlying
scientific theory of HGN testing and determined the science was valid.  Emerson, 880 S.W.2d at 769.  By making that determination, the court
relieved the State of the burden of presenting scientific evidence with regard
to HGN testing.  Gullatt v. State, 74 S.W.3d 880, 883–84 (Tex. App.—Waco 2002, no pet.). 
The Emerson court found that
testimony concerning an individual’s performance on the HGN test is admissible
if it is shown that the witness testifying is qualified as an expert on the HGN
test.  Emerson, 880 S.W.2d at 769.  In the case of a police officer or other law
enforcement official, this requirement is satisfied by proof that the officer
has received practitioner certification by the State of Texas to
administer the HGN test. Id. 


            At a pretrial hearing to determine
whether nystagmus evidence was admissible, Officer Correia testified he was certified by the State of Texas to
administer the HGN test.  Thus, according
to Emerson, Officer Correia was qualified as an expert in the administration
and technique of the HGN test.  Id.  Appellant contends the trial court
nevertheless erred in admitting the evidence because the State did not meet the
third requirement of Kelly in that it
did not prove the test was applied properly on the occasion in question.  Appellant contends Officer Correia did not properly administer the HGN test because he
did not follow the NHTSA Manual.  In
conducting the HGN test, an officer looks for three clues as to each of the
suspect’s eyes.  NHTSA
Manual at VIII – 17. They are: (1) the eye cannot follow a moving object
smoothly; (2) distinct nystagmus when the eye is at
maximum deviation; and (3) an onset of nystagmus
before the eye has moved forty-five degrees to the side.  Id.  The 1995 DWI Detection Manual published by
the NHTSA provides the following procedures for conducting the HGN test:

Begin by asking “are you
wearing contact lenses”, make a note whether or not
the suspect wears contacts before starting the test.  If the suspect is wearing eyeglasses, have
them removed.

Give the suspect the
following instructions from a position of interrogation (for officer safety keep your weapon away from
the suspect):

“I am going to check your
eyes.”

“Keep your head still and
follow this stimulus with your eyes only.”

“Keep focusing on this
stimulus until I tell you to stop.”

Position the stimulus
approximately 12-15 inches from the suspect’s nose and slightly above eye
level.  Check the suspect’s eyes for the
ability to track together.  Move the stimulus
smoothly across the suspect’s entire field of vision.  Check to see if the eyes track the stimulus
together or one lags behind the other. 
If the eyes don’t track together it could indicate a possible medical
disorder, injury, or blindness.

Next, check to see that both
pupils are equal in size.  If they are
not, this may indicate a head injury.

 

            Appellant contends Officer Correia did not follow the above procedures correctly
because he combined the step which calls for the examiner to check for equal
pupil size with the step that requires a check for the ability of the eyes to
track together.  The only pre-test
screening required by the NHTSA Manual is for the officer to determine whether
the suspect wears contact lenses or eyeglasses. 
Because Officer Correia testified that he
checked appellant for all of the indicators required by the NHTSA Manual and
the manual does not require that pupil size be checked at a different time, he
properly performed the screening as required by the manual.  See
Webster, 26 S.W.3d at 723.

            Appellant further contends that
Officer Correia did not pass the stimulus in front of
appellant’s eyes the required number of times to properly administer the
test.  Appellant argued during the
pretrial hearing that each step covered in the NHTSA Manual required a separate
pass of the stimulus in front of the eye. 
Contrary to appellant’s assertion, the manual does not require a minimum
number of passes.  

            Because Officer Correia
conducted every test required by the NHTSA Manual, we conclude he performed the
screening properly on the occasion in question. 
All three criteria of Kelly
were satisfied, and Officer Correia’s testimony
concerning the results of the HGN test was admissible.  Accordingly, we overrule appellant’s first
issue.

Did the trial
court err in admitting evidence of VGN and resting nystagmus?

 

            In his second and third issues,
appellant contends the trial court erred in admitting evidence of VGN and
resting nystagmus because the court failed to
determine the underlying scientific reliability of these tests.  At the pretrial hearing and at trial, Officer
Correia testified that he performed a VGN test on
appellant.  He testified that when
performing this test, he holds the stimulus above the suspect’s eyes for four
seconds.  Officer Correia
testified that VGN shows whether a suspect has reached his tolerance level for
alcohol or is under the influence of a narcotic, most likely, phenylcyclohexyl piperidine
(PCP).  Officer Correia
further testified that VGN testing is an extension of HGN testing and is
considered the same test, but instead of the stimulus being moved from side to
side, it is moved vertically.  Officer Correia testified that he did not know the underlying
scientific theory behind VGN testing.

            With regard to resting nystagmus, Officer Correia
testified that before he began to move the stimulus in front of appellant’s
eyes, he noticed appellant’s eyes were jerking involuntarily.  Officer Correia
explained that this phenomenon, known as “resting nystagmus,”
is indicative of narcotics use.  The
State did not present evidence of the underlying scientific theory behind
resting nystagmus. 

            Testimony concerning VGN and resting
nystagmus, like testimony concerning HGN, is
considered novel scientific evidence and is subject to the requirements of Kelly v. State.  See Emerson, 880 S.W.2d at 763;
Kelly, 824 S.W.2d at 568. 
Application of the Kelly
factors is germane to evaluating whether an expert’s opinion will withstand
scrutiny outside of the courtroom. 
Expert testimony that is not grounded in methods and procedures
acknowledged by scientists in the particular field of study amount to no more
than subjective belief or unsupported speculation.  Daubert v. Merrell Dow
Pharmaceuticals, Inc., 509 U.S. 579, 589–90, 113 S. Ct. 2786, 2795, 125 L.Ed.2d 469 (1993).  Unreliable evidence is of no assistance to
the trier of fact and is therefore inadmissible under
Texas Rule of Evidence 702. Kelly, 824 S.W.2d at 568.

            The proponent
of expert testimony based on a scientific theory must show by clear and
convincing evidence that it is: (1) reliable; and (2) relevant to assist the trier of fact in its fact-finding duty.  Id. at 572.  Consequently,
the State, as the proponent of the evidence, had the burden of producing
evidence of the underlying scientific theory behind the expert testimony.  Wyatt v. State, 23 S.W.3d 18, 27 (Tex. Crim. App. 2000).  In Emerson, the Court of Criminal Appeals
exhaustively examined the scientific theory behind HGN testing, but did not
address the theory behind VGN or resting nystagmus
testing.  See Emerson, 880 S.W.2d at 763–69.  For VGN and resting nystagmus
evidence to be admissible, the proponent must present evidence of similar
research of the scientific theory underlying those tests.  See Wyatt, 23 S.W.3d at 27. 
Officer Correia testified that VGN and resting
nystagmus tests are extensions of the HGN test, but
that VGN and resting nystagmus indicate the suspect
is under the influence of narcotics as opposed to alcohol.  Without scientific proof behind this theory,
we cannot find the evidence admissible.  See Kelly, 824 S.W.2d at
568.  Because the State failed to
show that evidence of VGN and resting nystagmus
testing was reliable and relevant to assist the trier
of fact, we conclude the trial court erred in admitting the evidence.  But in this case, the admission of evidence
of VGN and resting nystagmus tests was harmless. 

            A reviewing court is to disregard nonconstitutional error that does not affect the
substantial rights of the defendant.  Tex. R. App. P. 44.2(b).  A substantial right is affected when the
error had a substantial and injurious effect or influence in determining the
jury’s verdict.  King v. State, 953 S.W.2d 266, 271 (Tex. Crim.
App. 1997).  A criminal
conviction should not be overturned for nonconstitutional
error if the appellate court, after examining the record as a whole, has fair
assurance that the error did not influence the jury or had but a slight effect.
 Johnson v. State, 967 S.W.2d 410,
417 (Tex. Crim. App. 1998).

            The evidence shows that appellant
was driving at a speed well below the thirty-mile-per-hour speed limit.  His car was weaving from lane to lane and, at
one point, he drove his car onto the curb. 
When appellant saw Officer Harris’s emergency lights, he exited his car
and attempted to push it into the median for no apparent reason.  When Officer Harris attempted to administer
the field sobriety tests, appellant could not comprehend the instructions.  Based on appellant’s behavior at the scene,
Officer Harris concluded that appellant was not competent to make arrangements
regarding what should be done with his car after his arrest.  Before he performed any nystagmus
tests, Officer Correia noticed appellant’s pupils
were constricted, which is a sign that appellant might have used a narcotic
analgesic.  Officer Correia
also noticed appellant’s speech pattern was incoherent and that he repeated
himself and became agitated.  Appellant
appeared to have a dry mouth and was licking his lips, which is also an
indication of narcotic use.  After
performing the HGN test, Officer Correia detected the
maximum number of clues to determine intoxication.  Both officers concluded appellant did not
have the mental and physical capacity to operate a motor vehicle. 

            The jury was charged that a person
could be intoxicated if he did not have the “normal use of mental or physical
faculties by reason of the introduction of alcohol, a controlled substances
[sic], a drug, a dangerous drug, a combination of two or more of those substances, or any other substance into the
body.”  The application paragraph
instructed jurors to find appellant guilty of driving while intoxicated if they
found he did not have the normal use of his mental or physical faculties
because of the introduction of an unknown drug into his body.  According to Officer Correia,
VGN and resting nystagmus testing revealed that
appellant was under the influence of a narcotic as opposed to alcohol.  The jury charge, however, did not require the
jury to determine what substance caused appellant’s intoxication.  Therefore, the trial court’s erroneous
admission of VGN and resting nystagmus evidence did
not affect appellant’s substantial rights and was harmless in light of other
properly admitted evidence.  See Brooks v. State, 990 S.W.2d 278, 287 (Tex. Crim. App.
1999).  Accordingly, we
overrule appellant’s second and third issues.

            Having overruled all of appellant’s
issues, we affirm the trial court’s judgment.

 

                                                                                    

                                                                        /s/        Kem Thompson
Frost

                                                                                    Justice

 

Judgment
rendered and Opinion filed February
 27, 2003.

Panel
consists of Justices Yates, Hudson, and Frost.

Publish — Tex. R. App. P. 47.2(b).