

# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

### NO. 02-10-00406-CR

DAVID BRIEN BABINEAUX                                    APPELLANT

V.

THE STATE OF TEXAS                                            STATE

----------

## FROM THE 97TH DISTRICT COURT OF MONTAGUE COUNTY

----------

## MEMORANDUM OPINION[1]

----------

## I. Introduction

Appellant David Brien Babineaux appeals his convictions for two counts of aggravated sexual assault and one count of indecency with a child. In two issues, Babineaux complains of the admission of certain testimony in violation of

---

[1]*See* Tex. R. App. P. 47.4.

Texas Rules of Evidence 403 and 404 and Texas Code of Criminal Procedure article 38.37.  We will affirm.

## II.  FACTUAL AND PROCEDURAL BACKGROUND

Babineaux's daughter L.B. attended a "Break the Silence" sexual abuse awareness program at Bellevue Junior High School when she was thirteen years old.  After the program, she made an outcry to the program's presenter, Jodie Connaughton of the child advocacy center in Bowie, Texas, that Babineaux had been sexually abusing her.  At the time, L.B. lived with Babineaux, his long-time girlfriend Debra Keyes, and Babineaux and Keyes's infant son.  L.B. told Connaughton that Babineaux "had done everything that [Connaughton] had just talked about," including touching her "breasts and vagina" and putting his "nuts" inside of her.  L.B. told Connaughton that the last time Babineaux had done anything to her was two days earlier, on February 27, 2005.  Connaughton referred the matter to Child Protective Services, who had an investigator interview L.B.; L.B. reiterated what she had told Connaughton and said that her father had been sexually abusing her since she was eleven years old.  Dr. Terry Johnson conducted a sexual abuse examination of L.B. that same day; the examination showed "positive physical findings consistent with a history of vaginal penetration."

On June 15, 2005, Babineaux was charged with aggravated sexual assault of a child by digital penetration (count one), aggravated sexual assault of a child by sexual organ-to-sexual organ contact (count two), and indecency with a child

2

by touching L.B.'s breasts with the intent to arouse or gratify his sexual desires (count three). All three counts alleged that the conduct occurred on or about February 27, 2005.

After Babineaux was indicted, Keyes, who had been living with him for twelve years and with L.B. for eight of those years, gave a statement in Babineaux's favor to private investigator Joe Hall. Keyes said that she was at home with L.B. and Babineaux the entire evening of February 27, 2005, and that L.B.'s assertions were "absolutely false." Keyes explained that L.B. was prone to lying and that Keyes suspected that L.B. was lying about this incident because Babineaux was a strict disciplinarian and she wanted to go live with her mother in Kansas.

Keyes and Babineaux later separated and began a custody dispute over their son. Keyes ultimately recanted the statement she gave Hall. At Babineaux's trial, she explained that Babineaux had coerced her into giving a statement in his favor because he had told her that he would take her son away from her. Keyes further testified that she was at a restaurant singing karaoke with friends, not at home, on the evening of February 27, 2005. Keyes said that she had not noticed any inappropriate conduct or sexual relationship between Babineaux and L.B during the eight years that L.B. had lived with them.

Keyes further testified to a conversation that she had with Babineaux several months after the alleged February 27 incident. During that conversation,

3

Babineaux told her that, on the evening of February 27, L.B. had continuously complained to him about vaginal itching. According to Keyes, Babineaux

> just got tired of [L.B.] bugging [him] so he said he took her into the living room and made her take her pants and her underwear off and laid her down on the floor to check to see what was going on. . . . He said that he spread her legs and he moved her pubic hair over with his hand and then he spread her lips to look.

The trial court overruled Babineaux's objections to the testimony.

The jury convicted Babineaux of all three counts and assessed Babineaux's punishment at five years' confinement and a $2,000 fine for count one; five years' confinement and a $2,000 fine for count two, but recommended community supervision; and two years' confinement and a $1,000 fine for count three. The trial court sentenced him accordingly, suspended the sentence for count two, and ordered a ten-year community supervision period for that count to commence upon completion of the prison sentence for count one. Babineaux later moved for a new trial, and at a hearing on his motion, he presented a witness to testify that the restaurant where Keyes said she spent the evening of February 27 did not offer karaoke on that night. The trial court denied his motion for a new trial.

### III. ADMISSION OF KEYES'S TESTIMONY

In two issues, Babineaux argues that the trial court erred by admitting Keyes's testimony about his vaginal exam of L.B. in violation of Texas Rules of Evidence 403 and 404 and Texas Code of Criminal Procedure article 38.37, and that the erroneous admission of that evidence harmed him.

4

## A. Standard of Review

We review a trial court's decision to admit or to exclude evidence under an abuse of discretion standard. *Weatherred v. State*, 15 S.W.3d 540, 542 (Tex. Crim. App. 2000); *Lagrone v. State*, 942 S.W.2d 602, 613 (Tex. Crim. App.), *cert. denied*, 522 U.S. 917 (1997). A trial court does not abuse its discretion as long as the decision to admit or to exclude the evidence is within the zone of reasonable disagreement. *Montgomery v. State*, 810 S.W.2d 372, 380 (Tex. Crim. App. 1990) (op. on reh'g).

## B. Evidence was not Extraneous Offense Evidence

Babineaux first argues that Keyes's testimony about his giving L.B. a vaginal examination was evidence of "other crimes, wrongs or acts," inadmissible under rule of evidence 404(b) or article 38.37, section 2 of the code of criminal procedure. *See* Tex. R. Evid. 404(b) (providing that evidence of "other crimes, wrongs or acts" is inadmissible to prove character conformity); Tex. Code Crim. Proc. Ann. art. 38.37, § 2 (Vernon Supp. 2010) (providing that evidence of extraneous offenses by the defendant against child-victim in a sexual assault case is admissible, notwithstanding rule 404, to show defendant's and child's state of mind or relationship). However, Keyes's testimony was not about a different incident than the one for which Babineaux was on trial. Instead, she was testifying about Babineaux's explanation to her, after he was indicted, about what had occurred on February 27, 2005; she testified that Babineaux was explaining what had really happened between him and L.B. "the night that

[Keyes] was gone" and that L.B. "was trying to make it more than what it was." When offering the evidence, the prosecutor argued that it was not evidence of an extraneous offense and instead "relates to the events themselves in the period referred to in the indictment." And in overruling Babineaux's objections, the trial court noted that the testimony was "[j]ust a different explanation of the occurrence," or Babineaux's attempt to explain what L.B. had accused him of.

Because Keyes's testimony was not about an extraneous act or offense, neither rule 404(b) nor article 38.37, section 2 of the code of criminal procedure was applicable to her testimony. *See* Tex. R. Evid. 404(b); Tex. Code Crim. Proc. Ann. art. 38.37, § 2. Consequently, we overrule the portion of Babineaux's first issue arguing that the complained-of testimony was inadmissible extraneous offense evidence.

### C. Evidence was not more Prejudicial than Probative

Babineaux also argues that the complained-of testimony was more prejudicial than probative under rule of evidence 403. *See* Tex. R. Evid. 403. He argues specifically that the testimony "stood only as evidence of Babineaux's character—that he supposedly lied."

Rule 403 provides that even relevant evidence may be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury . . . ." *Id.* "'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of

6

consequence to the determination of the action more probable or less probable than it would be without the evidence."  Tex. R. Evid. 401.

Rule 403 favors the admission of relevant evidence, and it is presumed that relevant evidence will be more probative than prejudicial.  *Shuffield v. State*, 189 S.W.3d 782, 787 (Tex. Crim. App.), *cert. denied*, 549 U.S. 1056 (2006).  A proper rule 403 analysis includes, but is not limited to, the following factors: (1) the probative value of the evidence; (2) the potential of the evidence to impress the jury in some irrational, yet indelible, way; (3) the time needed to develop the evidence; and (4) the proponent's need for the evidence. *Prible v. State*, 175 S.W.3d 724, 733 (Tex. Crim. App.), *cert. denied*, 546 U.S. 962 (2005).

Here, applying the rule 403 balancing factors, we hold that the trial court did not abuse its discretion by determining that the probative value of the complained-of testimony was not outweighed by its prejudicial effect.  *See Shuffield*, 189 S.W.3d at 787; *Prible*, 175 S.W.3d at 733.  Evidence that Babineaux admitted to touching L.B.'s sexual organ—albeit for the purpose of conducting a vaginal examination—was no doubt relevant and probative of the charged offenses.  The testimony at issue was very brief, spanning only three pages of the record.  Considering L.B.'s detailed testimony about Babineaux's continued sexual assaults on her, evidence that Babineaux said he "spread her legs," "moved her pubic hair over with his hand," and "spread her lips to look" was not likely to inflame the jury.  The State presented other evidence, including L.B.'s testimony and the physical examination results, to prove that Babineaux

7

had committed the offenses alleged in the indictment; but Babineaux's explanation to Keyes as to why he touched L.B. did constitute evidence that Babineaux admitted to touching L.B.'s sexual organ in some manner.

Having addressed all of Babineaux's complaints in his two issues, we overrule those issues.

## IV. CONCLUSION

Having overruled Babineaux's two issues, we affirm the trial court's judgment.

SUE WALKER
JUSTICE

PANEL:  GARDNER, WALKER, and MCCOY, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  May 12, 2011

8